## Ex parte BOYD.
## BOYD v. BOYD.

(Court of Civil Appeals of Texas. Texarkana. March 28, 1913. Rehearing Denied April 17, 1913.)

1. DIVORCE (§ 332*)—FOREIGN DIVORCE—CUSTODY OF CHILD.

Though an order of court, awarding to a spouse obtaining a divorce the custody of a child of the parties, must be given full faith and credit by the courts of another state, it is res judicata only so long as the material circumstances existing at the time of the order remain unchanged.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 843; Dec. Dig. § 332.*]

2. DIVORCE (§ 303*)—CUSTODY OF CHILDREN—ORDERS—CHANGED CONDITIONS.

Where a wife, who when her husband obtained a divorce and the custody of their child refused to perform the duties of a mother and was without a permanent home, subsequently acquired a home, with permanent employment and with opportunity to care for the child, and actually cared for her, there was a changed condition sufficient to authorize the court to award to her the custody of the child.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 793–795; Dec. Dig. § 303.*]

3. DIVORCE (§ 298*)—CUSTODY OF CHILDREN.

Under Rev. Civ. St. 1911, art. 4069, providing that where parents do not live together their rights to the custody of their children are equal, a husband obtaining a divorce from his wife is not entitled to the custody of a child as against the rights of the wife, but the court, in awarding the custody of the child, must consider alone the rights and welfare of the child.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 781–787; Dec. Dig. § 298.*]

Appeal from District Court, Bowie County; P. A. Turner, Judge.

Habeas corpus by Albert C. Boyd against Phanie L. Boyd, to obtain the possession of a child, Emma Rachel Boyd, four years old, held by defendant. From a judgment awarding the custody of the child to defendant, relator appeals. Affirmed.

This is a habeas corpus proceeding by the father to obtain the possession of his child, a girl four years of age, held by its mother. The trial resulted in a judgment continuing the child in the custody of the mother. The relator and respondent were married in the state of Oklahoma, and the child was born there. On March 12, 1912, about five years after the marriage, the husband filed a suit for divorce against the wife in the district court of Coal county in Oklahoma. The petition prayed for absolute divorce and for the custody of the child, and, omitting formal parts, the allegations were: "That on or about June 15, 1911, the defendant, Phanie L. Boyd, abandoned and deserted plaintiff without excuse, cause, or provocation, and has ever since remained wholly away from plaintiff, notwithstanding his repeated requests for her return, and receipt, acceptance, and appropriation of sufficient sums of money by him for that purpose supplied, and that said desertion and abandonment now continues. That the defendant has been and is guilty of extreme cruelty toward plaintiff, in this, to wit, that she willfully and persistently refuses and denies him of her society and duty, and deprives him of the company and society of his child and the knowledge of its comforts, safety, and whereabouts, to his great humiliation and pain. And as a further cause of action plaintiff states that said defendant is guilty of gross neglect of duty toward him in that she fails, refuses, and neglects to perform the ordinary duties of a wife and mother, so that he may give attention to and make provision for the wants and necessaries of the family, the health and education of the infant, Emma Rachel Boyd, and the acquirement of a home and shelter as on him by his legal duty to wife and child incumbent. Plaintiff further says that he is an able-bodied man, regularly and continually employed, earning about $70 per month, and is willing and able adequately to support the family and to provide for and educate the child, Emma Rachel Boyd, aforesaid, and that the defendant, Phanie L. Boyd, is without a permanent home, and itinerant. Plaintiff further says that he has always demeaned himself properly, and acted toward defendant as a faithful husband, and is without fault in the premises; that he has given the defendant no cause or provocation whatever for her desertion and extreme cruelty toward him and her gross neglect of duty as aforesaid." On August 8, 1912, the court entered a decree dissolving the marriage relation, and awarding the care and custody of the child to the father. The court had jurisdiction of the parties and the child. The decree shows that service was had by publication, and that no answer was filed by the defendant. On the day the decree was entered the husband wrote a letter to the wife, who was then residing in Texas, stating that a divorce was granted, and he was awarded the custody of the child, and that if she wanted the child and would

come after it it would be all right. The wife went to Oklahoma and got the child, and then came back with it to Texas, where she has permanently made her home. By letting the wife have the child it was not the purpose of the father to relinquish his custody of it. At the trial of the habeas corpus testimony was introduced showing the condition and situation of the parties at the time of the hearing, with reference to the care and custody of the child. Neither party was shown to be unfit for the custody of the child. The judgment of the judge awarding the custody of the child to the mother. involves the findings of fact that since the decree of the Oklahoma court there has been material change in the situation and condition of the parties as to their fitness as custodian for the child; that the Oklahoma judgment is not res adjudicata of such new facts; that the mother now is the more fit and suitable one to have the custody and care of the child; and that the best interest of the child now demands its continuance with the mother. The evidence supports such findings, and they are here sustained and adopted.

Mahaffey & Thomas, of Texarkana, for appellant. Geo. W. Johnson, of New Boston, for appellee.

LEVY, J. (after stating the facts as above). [1] By the first assignment it is contended that the judgment in the instant proceeding is contrary to the law and evidence, for that the judgment of the district court of Coal county, Okl., awarding the custody of the child to appellant is res adjudicata of such custody, and such judgment should be given full faith and credit by the courts of Texas. It is settled, and not doubted, that an order of the court awarding custody of the child to the parent is a judgment that should be given faith and credit by the courts of other states, as required by the federal Constitution. Wilson v. Elliott, 96 Tex. 472, 75 S. W. 368, 97 Am. St. Rep. 928. But an order awarding custody of a child is not considered res adjudicata except for so long as the material circumstances existing at the time of the order remains unchanged, for it is not the object of the proceeding to award custody to establish a permanent custody. And the rule is that, where a new state of facts between the parties in relation to the child has arisen subsequently to the prior adjudication, the matter should not be adjudged res adjudicata. Wilson v. Elliott, supra.

[2] In order to apply this rule we are thus brought directly to the leading question as to whether the points in controversy in the instant proceeding, upon which the evidential force of the Oklahoma judgment is to be directed, were the same matters in issue, or points in controversy, raised and determined in the first proceeding, or a new state of facts between the parties in relation to the child arising subsequently to the first proceeding. As the judge trying the case refused to apply the estoppel of the Oklahoma judgment to the matters arising in the instant proceeding, it must be assumed, as we must do in support of the judgment rendered, that he based his judgment, which is a modification of the Oklahoma judgment, on the finding that a new and material state of facts between the parties in relation to the child has arisen subsequently to the adjudication by the Oklahoma court. From a consideration of the testimony we conclude that such findings of fact are warranted by the evidence and should be sustained. Hence the court did not err in adjudging that the Oklahoma judgment was not res adjudicata. It is apparent on the face of the petition and judgment in the Oklahoma proceeding as to what questions were litigated therein. By reference to these records it appears that the character, condition, and situation of the respective parties at that time in relation to the child were the matters in issue, and shown to the court in order to decide the fitness of the parties for the custody of the child. By the allegations, which must be presumed to have been proven, the father was shown to be an able-bodied man, of good character, regularly and continually employed and earning $70 per month, and willing and adequately able to support and educate the child. The mother was shown, according to the allegations (1) to have persistently deprived the father of the company and society of the child and the knowledge of its comforts and whereabouts, to his humiliation and pain, and (2) refusing and neglecting to perform the duties of a wife and mother, and (3) to be without a permanent home and itinerant. The testimony offered in the instant proceeding was as to the character, condition, and situation of the respective parties in relation to the child at the present time of the hearing. It was proven by the father that he is 32 years old, of good moral character, and has employment at the coal mines in Coalgate, earning $2.50 per day, and that he is willing and able to maintain and educate the child, and is desirous of having the child. The father does not own a home, but he says, "I can furnish a home for the child at my mother's and father's, or I can furnish a home for her elsewhere." It was shown that his father and mother were living at Coalgate and had a good home there. It was proven by the mother as follows: "I now have a permanent position at $15 per month and board for myself and child. I am living in the family with Mr. and Mrs. E. R. McCoppin, husband and wife. I am working for them. They run a store and hotel at Bassett, Tex. I have a nice comfortable home with Mr. and Mrs. McCoppin, and have an opportunity to see after and care for my said child. I am 27 years old, in good health, and I will take care of, educate, and main-

tain the child in a manner that will be to the best interest of the child; I want to do so because I love it. The people with whom I live are good to me and my child. There is a public school at Bassett, within sight of where I live, to which I can send my child." Mr. McCoppin corroborates the statements of the mother, and testifies further, "I have noticed her disposition toward the child from time to time, and she is kind to it and cares for the child in a very tender manner, and seems to love it very much." Comparing the facts adjudicated in the former proceeding with the facts now relied on, it is seen that at the time of the prior proceeding the mother "neglected and refused to perform the duties of a mother," and "was without a permanent home and itinerant," while at the present time she is faithfully and lovingly performing her duty towards the child, and has a home, with permanent employment and wages, and with full opportunity to attend and care for the child. This constitutes a new and changed condition and situation of the mother in relation to the child, and sufficient, we think, to sustain the findings involved in the judgment of the judge and in not adjudging the Oklahoma judgment res adjudicata of such matters here relied on to give her the custody of the child. If the mother was entitled, as she was, to have a modification of the prior judgment, the propriety and fitness of her selection for the custody of the child four years old, considering the welfare and best interest of the child, cannot be disturbed on appeal.

[3] The second assignment presents the point that the father is entitled to the custody of his minor child, even against the mother, unless it is made to appear that his conduct, habits, and character, as directly affecting the child, are such as to render it to the best interest of the child to take it from his custody. The general doctrine on which the point is predicated that the father has the absolute right to the custody of his child, if personally unobjectionable, cannot now obtain and be applied in this state, for the statute applicable to guardianship, where the parents do not live together, would fix the rule likewise in this character of cases that the rights of the mother and father to the custody are equal, leaving the rights and welfare of the child alone to be considered. See article 4069. There is nothing in the record to suggest the unfitness of the mother to have and continue the custody.

The judgment is affirmed.