### GOLDSMITH et al. v. SALKEY.

#### No. 10176.

Court of Civil Appeals of Texas.
San Antonio.

July 10, 1937.

Rehearing Denied April 13, 1938.

Henry A. Hirshberg, of San Juan, P. R., and Carter & Lewis, of San Antonio, for appellants.

Arthur J. Freund, of St. Louis, Mo., and Johnson & Rogers, of San Antonio, for appellee.

SMITH, Chief Justice.

Appellant Ruth E. Goldsmith and appellee, J. Sydney Salkey, were married in St. Louis, Mo., on June 18, 1924, and established the family domicile there. On February 26, 1926, a daughter, Joan, was born to the Salkeys, and, now eleven years old, still lives to be the subject of this litigation.

On July 15, 1930, in a proper circuit court of the city of St. Louis, Mo., where the parties still resided, appellant, obtained a decree of divorce from appellee, with custody of the minor daughter for eleven months of the next year, and ten months of each ensuing year, until further orders of the court, the custody being awarded to appellee during the remainder of the time, as well as all Saturday afternoons, Sundays, and legal holidays. The parents were given the privilege of taking the child beyond the limits of the state of Missouri at such reasonable times as they might elect, until further orders of the court.

Both parents have since remarried, appellant Mrs. Salkey now being the wife of Nat Goldsmith, who has joined her in this litigation. The Goldsmiths reside and are permanently domiciled in San Antonio, Bexar county, Tex., and have resided there since their marriage, in October, 1932. In the meantime, about July 1, 1931, appellant Mrs. Salkey moved from St. Louis to Los Angeles, Cal., and resided there until she married Goldsmith and joined him in residence in San Antonio. Salkey still maintains his domicile in the state of Missouri.

In August, 1934, at the instance of Salkey, upon petition filed in June, 1934, the St. Louis circuit court, in which the prior proceedings were still pending, made an order modifying the original decree so as to award the custody of the minor to Salkey from September 1st to June 15th in each year, and to appellant for the remaining two and one-half months in each year. Mrs. Salkey voluntarily appeared and participated in that proceeding. That order was affirmed by the St. Louis Court of Appeals (Salkey v. Salkey, 80 S.W.2d 735), and writ of certiorari was denied by the Supreme Court of Missouri. The Goldsmiths retained the custody of the child in their San Antonio home during that litigation, but in pursuance of the modified order, when made final, they returned her to appellee in St. Louis. There she remained from September, 1935, to June, 1936, when Salkey returned her to the Goldsmiths in San Antonio, as required by the modified decree of the St. Louis Court.

While the minor was in the custody of the Goldsmiths during the ensuing two and one-half months, under the Missouri decree, Mrs. Goldsmith had herself appointed by the probate court of Bexar county as guardian of the person and estate of her daughter, and she and her husband, on August 5, 1936, while her daughter was residing with her during said period fixed by the existing decree of the Missouri court, instituted a proceeding in a district court of Bexar county, seeking an order giving them general custody of the child, alleging material changes in conditions affecting its welfare since the rendition of the modified decree of the Missouri court. Upon that pleading the district judge issued the writ of habeas corpus, as well as an injunction restraining Salkey from interfering with the existing custody of the child. These writs seem not to have been served upon Salkey. Citation was issued to Bexar county, only, for him in the main case, but was not served upon him, it being true, as alleged in appellant's petition, that he was at the time a resident of St. Louis. However, after the expiration of the time fixed in the Missouri decree for the return of the child to him (September 1st), Salkey came to Bexar county, and then filed in the same court an application for writ of

habeas corpus for custody of the child and to enforce the terms of the Missouri decree. The two proceedings were consolidated. By a cross-action in the consolidated case the Goldsmiths alleged that since rendition of the modified decree of the Missouri court, in June, 1934, conditions affecting the welfare of the minor had changed in various material respects, and prayed that they be given custody of her in the future. The court below sustained Salkey's plea to the jurisdiction of said court, over the Goldsmiths' cross-action, upon the ground that the Missouri court, in the exercise of an admittedly proper jurisdiction, having previously adjudicated the question of the custody of the minor, had continuing and exclusive jurisdiction thereover, and that for the Texas court to undertake to adjudicate the question, even though under changed conditions affecting the welfare of the minor, would be to deny full faith and credit to the judgment of a court of competent jurisdiction of another state, in contravention of the full faith and credit clause of the Federal Constitution (article 4, § 1). Upon sustaining Salkey's said plea to the jurisdiction, the court below dismissed appellants' cross-action for the custody of the minor, and ordered them to deliver the minor to appellee. The Goldsmiths appealed.

The record shows that under the laws of the state of Missouri, as construed by the courts of that state, when the jurisdiction of the circuit court of Missouri was invoked by the parties, and assumed by the court, for the purpose of divorce and adjudication of the question of the custody of the child, that court would have continuing (and, apparently by necessary implication, exclusive) jurisdiction to pass upon future questions arising as to the custody of the child until she would become sui juris, notwithstanding its removal, by its custodian, to the latter's new domicile in another state. In re Krauthoff, 191 Mo. App. 149, 177 S.W. 1112; In re Leete, 205 Mo.App. 225, 223 S.W. 962, 968. Both opinions are in evidence in this case, as the basis of the opinion of the sole witness upon this question.

The record also shows that this is not a suit to invoke only the police power of the state for the protection of the minor within its borders, but, on the contrary, one in which the question of the future custody of the child, for the time being, is to be adjudicated.

In accordance with a provision of the decree of divorce, Salkey provided for the maintenance of the minor up to the time of the filing of this suit.

The abstract question of whether the legal domicile of the minor, in the general sense, was or is in the state of Missouri, has not been determined by the majority, that question not being deemed necessary to this decision.

The record shows that at the time of the institution of this proceeding the minor was lawfully in the custody of the Goldsmiths, in their San Antonio domicile, by reason of her delivery to them by appellee in pursuance of the decree of the Missouri court.

We conclude that in their cross-action appellants alleged sufficient facts to authorize the court below, given jurisdiction, to give the custody of the minor to appellants, and this conclusion narrows this inquiry to the one question of whether by reason of appellants' domicile in Texas, and the minor's lawful, even if only temporary, residence with appellants in their domicile in said state, the courts of Texas acquired jurisdiction to adjudicate the question of the minor's custody, in view of such changed conditions, notwithstanding the original adjudication of the question of custody was properly made in the Missouri court. The merits of the controversy between the parties are not at all involved in this appeal, which concerns only the question of jurisdiction of the court below over that controversy.

The judgment of the Missouri court was undoubtedly res adjudicata of all questions concerning the right to the custody of the minor which were or could have been raised at the time of that adjudication, which was binding upon all parties, as in the case of any other character of judgment; and we will assume, for the purpose of this decision, that a decree of this character is entitled to full faith and credit in all jurisdictions, although the courts do not uniformly so hold.

It seems to be well settled, however, that the finality of such judgment obtains only so long as the circumstances attending its rendition remain the same; it does not operate to cut off those interested, including the parties to that judgment, from afterwards inquiring into conditions affecting the infant's welfare, and, by showing that such conditions have materially changed, procure an adjudication of the

question of custody in the light of the changed conditions. Such proceeding should, or at least, may be by new and independent suit, and that suit need not necessarily be brought in the forum of the original adjudication, but may be instituted in any court of competent general jurisdiction. Speer's Marital Rights, 3d Ed., §§ 636, 643; 9 R.C.L. p. 477, § 293; 15 Tex.Jur. p. 673 et seq., § 169 et seq.; annotations in 10 L.R.A.,N.S., 690, 39 L.R.A.,N.S., 990, L.R.A.1915B, 154, 72 A.L.R. 441; Campbell v. Storer, 101 Tex. 82, 104 S.W. 1047; Wilson v. Elliott, 96 Tex. 472, 73 S.W. 946, 75 S.W. 368, 97 Am.St.Rep. 928; Ex parte Garcia, Tex.Civ.App., writ refused, 187 S.W. 410; Ex parte Boyd, Tex.Civ. App., 157 S.W. 254, 255; Cox v. Cox, Tex. Civ.App., 214 S.W. 627; Keith v. Keith, Tex.Civ.App., 286 S.W. 534, 535; Black v. Black, Tex.Civ.App., 2 S.W.2d 331, 332; McLeod v. McLeod, Tex.Civ.App., 9 S.W. 2d 141; Lowry v. Saxton, Tex.Civ.App., 23 S.W.2d 806; Kenner v. Kenner, 139 Tenn. 211, 201 S.W. 779, L.R.A.1918E, 587. Appellee relies largely upon the case of Lanning v. Gregory, 100 Tex. 310, 99 S. W. 542, 10 L.R.A.,N.S., 690, 123 Am.St. Rep. 809. That case, however, has been so well distinguished and its effect so restricted by later decisions of our Supreme Court, as well as of our Courts of Civil Appeals, as to render it without value in determining the present appeal. Campbell v. Storer, supra; Lowry v. Saxton, supra.

■■ If a decree awarding the custody of children in divorce cases is such as to entitle it to the protection of the full faith and credit provisions of the Federal Constitution (section 1, art. 4), then such protection extends as far as, but no further than, that protection given by the courts of this state to the judgments of our own courts. Tested by that rule, appellee can ask for no more consideration in our courts than he could ask if the decree he relies upon was of one of the courts of this state. A judgment of a court of this state awarding the custody of an infant is final and binding upon our own courts only so long as the conditions upon which it was rendered continue; when the conditions change, any other court of competent jurisdiction and venue in the state has jurisdiction of a new and independent suit to adjudicate the question of custody in the light of the changed conditions. Ex parte Garcia, supra; Keith v. Keith, supra;

Black v. Black, supra; McLeod v. McLeod, supra.

■ Appellee relies upon the rule, sometimes prevailing, that the domicile of a child is that of its father, and says that as the father in this case was domiciled in the state of Missouri, so was that state the domicile of the minor, as a matter of law; wherefore, appellee asserts, as both the father and minor were domiciled in another state, the courts of this state can exercise no lawful jurisdiction over them in a proceeding of this nature, although the mother, who seeks to invoke that jurisdiction, is permanently domiciled here, and although the minor was legally, if only temporarily, residing with her when the suit was brought. We are not impressed with appellee's contention. Notwithstanding the general rule may be that an infant's status is fixed by that of its father, that rule breaks up, and the rights of the parents become equal, when they are separated and divorced, and, if the status of the child is controlled by the status of the parents, then it is controlled by the status of the parent with whom it resides for the time being. The exception may be narrowed to the position that where by an existing decree the custody of the infant is divided between the two parents, and if the domicile of the parents really affects the status of the child, then its domicile is with that parent to whom its custody is for the time being awarded. The rights and status of the parents in a matter of this kind are of secondary importance, so far as that is concerned, the primary and chief concern of the courts being the welfare, or as sometimes stated, the best interests, of the infant. Ex parte Boyd, supra; Lowry v. Saxton, supra; Kenner v. Kenner, supra. These observations, growing out of a study of the decisions and of our statutes, particularly article 4118, R.S.1925, lead to the conclusion that, because Bexar county is the established domicile of appellants, Mr. and Mrs. Goldsmith, because the infant over whose custody the parties are so bitterly fighting was for the time being legally residing with appellants in their home in Bexar county, and because appellee is a nonresident of the state, the courts of Bexar county were open to appellants as a forum for adjudicating the question of custody, in the light of present conditions materially affecting the infant's welfare. If it is made to appear that those conditions have so changed since the prior

adjudication as to justify a change in the minor's custody, then the Bexar county courts have jurisdiction.

The judgment is reversed and the cause remanded for further proceedings in consonance with this opinion.

SLATTON, J., being disqualified, did not participate in this decision.

D. F. STRICKLAND, Special Associate Justice, sitting in the place of SLATTON, J., concurs in the foregoing decision and opinion.

MURRAY, J., dissents.

MURRAY, Justice (dissenting).

I do not concur in the above opinion. I believe that it is settled law in this state, as well as in many other jurisdictions, that before a court has jurisdiction to change the domestic status of an infant that infant must have a domicile in the state, and within the jurisdiction of the court attempting to pass upon its domestic status. I do not understand the majority as holding that Joan Salkey was domiciled in San Antonio, Tex. On the contrary, the opinion seems to hold that the mere presence of the child in San Antonio, Tex., was sufficient to give jurisdiction to the district court of Bexar county to pass upon and fix the domestic status of the infant, Joan Salkey.

The majority opinion correctly holds that the Missouri decree was res adjudicata of all questions concerning the right of the custody of the minor, which were, or could have been, raised at the time of that adjudication, which was binding upon all parties, as in the case of any other character of judgment.

The majority opinion also correctly holds that the Missouri decree does not cut off those interested, including the parties to the judgment, from afterwards. inquiring into conditions affecting the infant's welfare, and, by showing that such conditions have materially changed, procure an adjudication of the question of custody of the child, in the light of changed conditions. But I do not concur in the holding that the mere presence, or temporary residence, of the infant, Joan, in Bexar county, Tex., was sufficient to give jurisdiction to the Bexar county court to pass upon the permanent domestic status of Joan. It is conceded by both parties that this is not

a suit whereby the police power of the state is invoked for the protection and determination of the temporary custody of the child, but that it is intended as a suit in which only the permanent domestic status of the child is to be litigated.

It is my opinion that the courts of this state have uniformly held, where the question of jurisdiction has been raised, that before a Texas court can assume jurisdiction to pass upon the permanent domestic status of an infant it must be shown that the infant has a domicile within the jurisdiction of that court. Such is the holding in Lanning v. Gregory, 100 Tex. 310, 99 S.W. 542, 544, 10 L.R.A.,N.S., 690, 123 Am.St.Rep. 809. In that case the following question was certified, from the Court of Civil Appeals of the Fifth Supreme Judicial District, to the Supreme Court of Texas:

Question No. 3. "If the child's domicile at the time of the institution of this suit was in Louisiana, did the district court of Hunt county, Tex., have power or jurisdiction to hear and determine, as between relator and respondent, to whom the custody of the child should be awarded?"

The Supreme Court answered as follows: "To the third question we answer, the child being in the lawful custody of the father, his domicile was in the state of Louisiana, and the district court of Hunt county did not acquire jurisdiction of the child by reason of his temporary presence in the state of Texas. That court had no authority to adjudge a change of relation between the father and the child. Brown on Jurisdiction, 290."

In Milner v. Gatlin, 261 S.W. 1003, 1005, in an opinion by the Commission of Appeals of Texas, adopted by the Supreme Court, it is said: "At the time application by defendant in error was filed in the district court of Dallas county seeking the custody of the minor, and at the time judgment was rendered thereon awarding custody to her, the domicile of the plaintiff in error and the minor was in the state of Georgia. The domestic status of the infant was that of its father, and the courts of this state had no jurisdiction to pass on the question of its custody."

The court then cites Lanning v. Gregory, supra, with approval.

In A. L. I. Restatement Conflict of Laws, § 117, it is said: "A state can exercise through its courts jurisdiction to determine the custody of children or to cre-

ate the status of guardian of the person only if the domicil of the person placed under custody or guardianship is within the state." See, also, Wright v. Wright, Tex. Civ.App., 285 S.W. 909.

In the case of Campbell v. Storer, 101 Tex. 82, 104 S.W. 1047, after citing with approval the case of Lanning v. Gregory, supra, the court used language which might be construed to mean that the temporary residence of a child in Texas would be sufficient to give to the courts of Texas the power to determine its rightful custody or domestic status.

The case of Lanning v. Gregory, supra, was decided by the Supreme Court of this state on January 30, 1907, and the case of Campbell v. Storer, supra, was decided on November 6, 1907. Certainly, if the Supreme Court had intended by its decision in the Campbell v. Storer Case to overrule Lanning v. Gregory, supra, they would have said so by express terms, and would not have cited Lanning v. Gregory, supra, with approval. The only way in which the two decisions rendered during the same calendar year, by the same court, can be reconciled is, that the court intended in the Campbell v. Storer Case to hold that the child in question did in fact have a domicile in the state of Texas. This definitely appears from the facts set out in the Campbell Case. The rightful custody of the child, Ima Campbell, had never been adjudicated in any court. Her father, who, under such circumstances, would have been entitled to her custody voluntarily relinquished that right and gave the custody of Ima to an aunt, who was the sister of her deceased mother, and consented that this aunt might bring Ima to Texas and there keep her, according to the testimony of the aunt, for all time; and, according to the testimony of Campbell, until he might call for Ima's return to him. Under such agreement Ima was brought to Texas and resided here for more than two years, with her aunt. It occurs to me that under these facts Ima's domicile was in Texas, and that the court properly answered the certified question to the effect that the court of Texas did have jurisdiction to pass upon the proper custody of Ima Campbell. The court properly stated that the two cases were quite different.

There can be no question in this case that after the modified decree was entered in the Missouri court (a court whose jurisdiction had been originally invoked by Mrs. Goldsmith) giving to Mr. Salkey the general custody of his minor daughter, Joan, and in keeping with such decree Joan resided with Salkey in St. Louis, Mo., for nine months, the domicile of Joan became that of her father and general custodian, and that such domicile would not be in anywise changed by the father, in obedience to the modified decree, sending the child to Texas for a visit, for two and one-half months, to its mother, the present Mrs. Nat Goldsmith. On the 1st day of September, 1936, it became the duty of Mrs. Goldsmith to return Joan to her father in Missouri, or at least to permit her to be so returned, and her failure to do so constituted a violation of the very judgment under which Mrs. Goldsmith received Joan for a visit of two and one-half months. The modified judgment of the Missouri court has not been in anywise changed, and Joan's presence in Texas, after the 1st of September, 1936, was not lawful, and at the time this case was decided by the trial court Joan was not legally in Texas, but was here in violation of the Missouri decree.

I have been discussing the question of whether or not the Texas court acquired jurisdiction to hear and determine the domestic status of Joan Salkey. I wish now to discuss whether or not the Missouri court has ever lost its jurisdiction over the question of the domestic status of Joan.

In the first place, Mrs. Goldsmith (the former Mrs. Salkey) was the one who invoked the jurisdiction of the Missouri court. At the time the jurisdiction was invoked, Mrs. Goldsmith, Mr. Salkey, and Joan were all, unquestionably, domiciled in the state of Missouri, and, under the laws of Missouri, the Missouri court had continuing jurisdiction over the domestic status of Joan. After the rendition of the modified decree, Mr. Salkey was unquestionably the general custodian of Joan, and his domicile was in Missouri. Joan was residing with her father, and thereby her domicile became fixed in the state of Missouri. The Missouri court did not lose its jurisdiction over the question of the domestic status of Joan by ordering her sent to Texas for a visit of two and one-half months to her mother.

The only case which I have been able to find which is absolutely on all fours with the present case is that of Motichka v. Rollands, 144 Wash. 565, 258 P. 333, 334, by the

Supreme Court of Washington. The language used in that case is so clear and logical that I here desire to quote freely from that decision.

"Both parties were bona fide residents of Flathead county, Mont., from the time of their marriage until after the rendering of that decree of divorce. Appellant, Edward Motichka, has been at all times since then a resident of that county in Montana. Since the rendering of the divorce decree appellant has at all times complied fully with its terms and spirit. Some time after the rendering of the divorce decree, respondent, Mrs. Motichka, now Mrs. Rollands, moved to the state of Washington with the child, Luella Josephine, which had been awarded to her by the decree of the Montana court, and thereafter was married to Walter Rollands with whom she and that child resided at Leavenworth, in Chelan county, in this state. In May, 1926, appellant, having had the custody of Eva Irene since the rendering of the decree of divorce, permitted the mother of respondent to send to her Eva Irene for the purpose of, in good faith, complying with the divorce decree; that is, to the end that respondent might have Eva Irene with her during the summer vacation months. In the early fall of 1926, shortly prior to the close of the school vacation period, appellant, both by letter and telegram, asked respondent to return Eva Irene to him in Montana. These requests were ignored by respondent. Thereupon he came to Leavenworth and personally requested custody of the child from respondent, in order that he might take it back to his home in Montana, which request was by her refused. Thereupon appellant promptly commenced this proceeding. The trial court denied appellant's prayer for relief and awarded Eva Irene to respondent, manifestly upon the theory that there had been such changed conditions of the parties affecting Eva Irene's welfare that called for the placing of her in the custody of respondent and taking her from the custody of appellant; the trial judge being of the opinion that the Montana decree of divorce was no longer of any binding force because of such changed conditions and because of the physical presence of the child within the territorial jurisdiction of the trial court. It is apparent that Eva Irene was not sent to respondent at Leavenworth in this state with a view of becoming a resident of, or becoming domiciled in, this state; that is, it is apparent that appellant never had any such intention and never evidenced to respondent or her mother, or any one else, any such intention. It is also apparent that Eva Irene never had a residence or domicile in this state or in any other state than Montana. The child was but temporarily sojourning in this state.

"We read in section 1, art. 4, of the Constitution of the United States, that:

" 'Full faith and credit shall be given in each state to the public acts, records, and judicial proceeding of every other state.'

"It seems to us that the trial court has erroneously ruled, or in any event erroneously assumed that this constitutional mandate is of no controlling force in this case, because Eva Irene is physically within the territorial jurisdiction of that court; and that, therefore, the divorce decree of the Montana court awarding her custody to appellant may be ignored here, upon showing of change of conditions since the rendering of the Montana decree of divorce.

"It may be assumed that the general sovereign guardianship of the state is such that it extends over the persons of all minors residing or domiciled within its borders, even to the extent of not being bound by a judgment of a sister state rendered with reference to the personal guardianship of a minor while a resident and domiciled in such sister state. It may also be assumed that the general sovereign guardianship of the state is such that it extends to the temporary protection of all nonresident minors while temporarily in the state. But no decision has come to our notice holding or suggesting that the courts of one state may permanently assume general guardianship over a minor temporarily sojourning in the state, who is a resident of or has its domicile in another state. While this is a habeas corpus proceeding in form, it is, in substance, but a controversy between these parties over the rightful custody of Eva Irene; and the judgment rendered in this case is, in substance, an awarding of her to respondent and in effect permanently depriving appellant of the custody of the child and of his right to take the child back to Montana, the place of his and its residence and domicile. It seems to us that, under the circumstances here shown, the decree of the Montana court awarding Eva Irene to appellant must be given full faith and credit and recognized as a final adjudication on that question until modified by that court, or until Eva Irene ceases to have her residence and domicile in the state of

Montana. Much is said in the brief of counsel for respondent touching the present welfare of the child in the light of what is claimed to be changed conditions of the parties and of the child since the rendering of the Montana divorce decree. Were it necessary to go into that particular phase of the controversy, much apparently well-grounded argument could be advanced both for and against the desirability of change of the custody of Eva Irene, but that, we think, is foreign to our proper inquiry here to be made, in view of the fact that Eva Irene is not and never was a resident of or domiciled in the state of Washington, but has always, since her birth, been a resident of and domiciled in the state of Montana. Observations made in our decisions in Re Groves, 109 Wash. 112, 186 P. 300, and McClain v. McClain, 115 Wash. 237, 197 P. 5, 202 P. 173, are in harmony with this view, though the question was there somewhat differently presented. See, also, 12 R.C.L. 1114; 28 C.J. 1168, 1169.

"We conclude that the judgment of the trial court must be reversed with directions to that court to enter its judgment awarding the custody of Eva Irene to appellant, her father, to the end that he may take her to his and her home in Montana, where the question of her custody may be further considered and determined, if petitioned for, by the courts of that state, the state of her residence and domicile. It is so ordered."

The majority opinion lays great stress on the fact that the mother's domicile is in Texas, but it occurs to me that the domicile of the mother, while the father has the general custody of the child, by a previous adjudication of the question, is not important. The domicile of either parent is only important in determining where the domicile of the child is located. There can be no question but that the domicile of Joan is that of her legal custodian and father, J. Sydney Salkey.

In 19 C.J. p. 410, § 25, it is said: "An infant being non sui juris is incapable of fixing or changing his domicile, unless he has been emancipated by his parents. During minority the domicile of an infant continues to be the same as that of the person from whom he took his domicile of origin, and changes only with the domicile of that person. The domicile of legitimate child, during minority, ordinarily follows that of the father, and the mere separation of the parents does not affect the application of this rule. But where a divorce has been granted to the wife with custody of the infant, the domicile of the mother determines that of the child; and a like rule has been applied where the father forced the mother to leave him with the child. Abandonment by the father prevents domicile of the child from following that of the father."

Certainly, if, where the custody of an infant is given to the mother, the domicile of the mother determines that of the child, the converse would be true, and, where the custody of the child is given to the father, the domicile of the father would determine that of the child. Lanning v. Gregory, supra; Milner v. Gatlin, Tex.Com.App., 261 S.W. 1003; Burns v. Shapley, 16 Ala.App. 297, 77 So. 447; A.L.I.Restatement Conflict of Laws, § 32.

At the time the trial court in this case was called upon to decide the questions here involved he was confronted with the facts that a Missouri court of competent jurisdiction had previously adjudicated the question of the legal custody of Joan Salkey; that that court, under the law of Missouri, had a continuing and exclusive jurisdiction to determine in the future any question of changed conditions; that the general custody of Joan had been given to her father; that her father had his domicile and residence in Missouri; that, pursuant to the Missouri decree, Joan's father had sent her to Texas for a visit of two and one-half months with her mother; that that visit should have terminated on September 1, 1936; that the period of the visit had in fact terminated, but that Joan was being kept in Texas in violation of the judgment of a sister state, rendered by a court of competent jurisdiction, having jurisdiction over the parties to the case at bar. Under such facts, it occurs to me that the trial court rendered the proper judgment when he granted Salkey's application for a writ of habeas corpus and ordered the child delivered to Salkey, its legal custodian, so that he might return it to his home and domicile, which was likewise the home and domicile of Joan Salkey.

For the reasons above stated, I respectfully dissent from the majority opinion.

### On Motion for Rehearing.

SMITH, Chief Justice.

The controlling question in the case having been certified to our Supreme Court and by that court resolved in support of the decision of this court, 112 S.W.2d 165, ap-

786

pellee's motion for rehearing will be overruled.

SLATTON, J., being disqualified, did not participate in this decision; D. F. STRICKLAND, Special Associate Justice, sitting in his place.