## OLDHAM v. OLDHAM.

### No. 12905.

Court of Civil Appeals of Texas. Dallas.

Dec. 2, 1939.

Rehearing Denied Jan. 13, 1940.

C. W. & Chas. P. Atkinson, of Fort Worth, for appellant.

Burford, Ryburn, Hincks & Charlton and Logan Ford, all of Dallas, for appellee.

LOONEY, Justice.

This is a habeas corpus proceeding, instituted by Nannie Brittain Oldham, appellant, against her former husband, John C. Oldham, appellee, for the custody of Richard Grey Oldham, their son, about five and a half years of age; and from an adverse judgment, she prosecutes this appeal.

Appellant alleged, in substance, that she and appellee were divorced by the Circuit Court in and for Lee County, the State of Florida, on December 7, 1937, and that, as a part of the decree, the court disposed of the custody of the three children of the parties, all small boys, according to the terms of an agreement by the parents, as follows: "Nannie Brittain Oldham shall have the custody of said children during the following periods, to-wit: John Brittain Oldham and Richard Grey Oldham for the periods of Sept. 1 through May 31, or until the week before the beginning and until the week after the ending of each school term. During the remainder of said year other than during the school term and for the week before and the week following the same, John C. Oldham shall have the custody of said two children. The custody of Thomas Henry Oldham shall remain with Nannie Brittain Oldham until said child becomes six years of age. Then and thereafter the custody of Thomas Henry Oldham shall be divided between the parties hereto in the same manner and for the same term as above provided for John Brittain Oldham and Richard Grey Oldham.", alleging that the agreement was approved and incorporated into and became a part of the decree, in the following language: "And the court hereby approves, adopts and incorporates this agreement as a part of this decree, and retains jurisdiction of this cause and of the parties hereto in so far as relates to enforcement of said agreement and for the purpose of making such other and further orders concerning the custody and support of said children as the best interest and welfare of said children may require." A copy of the decree was attached to and became a part of appellant's petition, alleging that, since about May 31, 1938, appellee had held custody of the minor, Richard Grey Oldham, but failed to return him to the custody of appellant, as required by the terms of the decree, and still fails and refuses so to do.

Appellee's answer contained general and special exceptions, a general denial and special pleas, to the effect that, on September 10, 1938, appellee and appellant entered into a written agreement, under the terms of which she voluntarily relinquished to appellee custody of said minor, and that, in pursuance of such agreement, appellee's custody has since continued. And by way of further answer and cross action, referring to the divorce decree, copy of which was attached to and formed a part of appellee's petition, appellant alleged that, since December 7, 1937, the date of the decree disposing of the custody of the minor, conditions had materially changed (alleging specifically certain pertinent facts), justifying and requiring the court, in the exercise of its equity powers and judicial discretion, for the best interest of the minor, to grant appellee the exclusive custody and control of the minor; also alleged that, under the agreement of September 10, 1938, heretofore mentioned, appellant voluntarily relinquished her right to the custody of Richard Grey—praying that she take nothing by her action, that she be required "to specifically perform her agreement of Sept. 10, 1938", to the end that, appellee be awarded the exclusive custody and control of the minor, and for general relief.

At the conclusion of the evidence, the court announced its decision of the issues of fact and law in the following language: "Whereupon the case came on for trial upon its merits, and no jury having been demanded, all issues of facts, as well as of law, were submitted to the court for its determination, and the court after hearing the pleadings, the evidence and argument of counsel, is of the opinion that defendant's motion for judgment at the close of plaintiff's testimony, should be sustained, and that the plaintiff should take nothing and that the defendant should recover on his cross action." In a colloquy between counsel for appellant and the court, it was indicated that the action of the court was predicated on the agreement of September 10, 1938, the court saying: "* * my opinion is that the agreement takes precedence over the foreign judgment. Up to the date of the agreement, I will give the judgment full faith and credit, but after Mr. Ford (attorney for appellee) introduces the agreement you will have to do something about it".

At the outset, we are confronted with a cross' assignment of error urged by appellee, based upon the action of the court in admitting in evidence, over his objection, a certified copy of the divorce decree rendered by the Circuit Court of Lee County, Florida; the ground of the objection being that, the attestation of the clerk to the copy of the judgment was not certified to by the presiding magistrate as being in due form. Following the attestation, signed by Esther Draughon as clerk, the presiding magistrate, Honorable George W. Whitehurst, certified "that Esther Draughon, is the duly elected and qualified clerk of the Circuit Court, in and for Lee County" etc., but failed to certify that her attestation was in due form.

We do not deem it necessary to decide whether or not the authentication of the judgment was in substantial compliance with the Act of Congress, because we think it may be conceded that it was not, but that was only one method of proving a judgment in the courts of a sister state—proof may have been made by a witness, as at common law, and, furthermore, we know no reason why the judgment of another state may not be admitted as a fact, as we think was done in the instant case.

As before stated, appellant predicated her right to have the custody of the minor restored to her, exclusively on the provisions of the Florida judgment, a copy of which was attached to and formed a part of her petition, the material portions of which have heretofore been set out. In his cross action, seeking permanent custody and control of the minor, we think that, to all intents and purposes, appellee admitted the existence of the judgment; among other things, he alleged that "since the judgment of divorce and the decree providing for the custody of the said Richard Grey Oldham on Dec. 7, 1937, conditions have so changed as to require the court in the exercise of its judicial discretion to grant defendant herein the exclusive control and custody of said Richard Grey Oldham. In this respect, defendant (appellee here) would show to the court that the judgment of divorce and decree providing for the custody of said Richard Grey Oldham was rendered on Dec. 7, 1937. That pursuant to the terms of said decree defendant herein was entitled to the custody of Richard Grey Oldham and John Brittain Oldham, beginning one week after the close of the spring term of school and continuing until one week before the opening of the fall term. That pursuant to such decree plaintiff (appellant here) surrendered the custody of said Richard Grey Oldham and John Brittain Oldham to defendant (appellee) herein on June 4, 1938", which was followed by allegations in regard to changed conditions since the original decree was rendered; also alleged that, on September 10, 1938, "plaintiff (appellant) entered into a written contract with defendant herein (appellee), by which she voluntarily relinquished her right to the custody of the said Richard Grey Oldham", by reason of which, appellee sought to have the original decree modified, and that he be given permanent custody of the minor. Throughout, in his cross action seeking exclusive control and custody of the minor, appellee referred to the original decree, quoting therefrom, and, in effect, conceded that such a judgment was rendered as the copy attached to plaintiff's petition purported to show. Therefore, we think that, on appellee's admissions, the judgment was properly before the court and entitled to full faith and credit, as provided by Sec. 1, Art. 4, of the Federal Constitution, U.S.C. A.

As appears from the excerpts quoted, custody of the three young boys was given the mother for nine months covering the school period of each year, and was given the father for the remaining three months, the vacation period. It is obvious, we think, that the chancellor thought it for the best interest of the children, whether in the custody of mother or father, that they should be kept together, grow up together, that they might learn to regard and love each other as brothers, and not simply regard each other as sons of common parents, which would likely result if they are permanently separated. We think it also obvious that the chancellor deemed it for their best interest, that the continuity of their school work should not be broken; and that, the periodic change of custody was to prevent, if possible, the natural affection of parent for child, and child for parent, from waning, growing cold, or becoming extinct. These provisions are parts of the Florida Court decree and are entitled to full faith and credit in the courts of this State, until it is shown, by allegation and proof, that the situation and character of the respective parties have so changed since the rendition of the decree, as to make. it to the best in-.

terest of the children, or either one of them, to set aside or modify the former decree.

■ The rules of law controlling in such cases have been very clearly and succinctly stated by our courts. In the case of Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 168, 116 A.L.R. 1293, Judge Martin, speaking for the Supreme Court, said: "It is no longer an open question in American jurisprudence that a child custody judgment is res judicata only of what was then before the court, and that far only is protected by the 'full faith and credit' clause of the Federal Constitution, article 4, § 1. A subsequent material change of conditions brings into being a new and independent cause of action. The original custody judgment may be absolute and final in form. In reality, it is temporary and conditional. Whether expressed or not, the law writes into each of such judgments, in substance, that its finality ends when and if conditions affecting the welfare of the child have materially changed. So that it may be said that a petition alleging such facts is in no sense an attack upon such former judgment, but is an independent suit, having to do with a present status, and challenging the jurisdiction of a proper court to declare such status upon the basis of the then welfare of the child. That welfare is the concern of sovereignty, as the guardian of persons under disability, and in a very real sense the state is interested in the result, though not a nominal party. That concern does not end with a judgment, but is a continuing one until such child becomes sui juris." And, in the more recent case of Evans v. Taylor, Tex.Civ.App., 128 S.W. 2d 77-79, Judge Folley announced rules to the same effect; he said: "We think it is well settled in our jurisdiction that the two judgments of the Kansas court are res adjudicata of all questions concerning the right to the custody of the child which were or could have been raised at the time of the respective adjudications, are binding upon all the parties and the decrees are protected by the full faith and credit clause of the Federal Constitution. U.S.C.A. Const. art. 4, § 1. Goldsmith et al. v. Salkey [131 Tex. 139], 112 S.W.2d 165, 116 A.L.R. 1293; Id., Tex.Civ.App., 115 S.W. 2d 778, 116 A.L.R. 1293. It is also well settled that the finality of such judgments obtains so long as the circumstances remain the same. Such rule, however, does not bar a subsequent proceeding to modify or change the former award provided conditions have changed so materially since such decree as would warrant an adjudication upon the question in the light of the changed conditions. In order to warrant a change or modification of the order the true test seems to be that the proof must show the 'situation and character of the respective parties have so changed as to render it to the (best) interest of the infant' that the former order be set aside or modified. Wilson v. Elliott, 96 Tex. 472, 73 S.W. 946, 947, 97 Am.St.Rep. 928".

■ In order, therefore, for appellee to disturb the judgment rendered by the Circuit Court of Lee County, Florida, it was incumbent upon him to both allege and prove that the conditions had so materially changed since the rendition of the decree as to render it for the best interest of the minor, whose custody is here involved, to set aside or modify the decree. In his answer and cross action, appellee alleged that, since the rendition of the Florida judgment, conditions had materially changed, warranting an adjudication modifying or changing the same, to the extent of awarding to appellee the permanent custody and control of the minor Richard Grey, but this is as far as appellant went in his effort to change the decree, as no proof was offered in support of his allegations. We can but conclude, therefore, that, as appellee failed to discharge the burden incumbent upon him, the trial court erred in rendering judgment disturbing the Florida decree, by awarding to him the permanent custody of the minor in question.

Appellee contends, however, that the letter-agreement of September 10, 1938, wherein appellant consented for their minor son Dick (Richard Grey) to remain with appellee indefinitely, was, within itself, such a material change in conditions as to warrant an inquiry into, and change of, the original decree, by awarding the permanent custody of the minor to appellee. The letter seems to have been written under these circumstances: After the decree of December 7, 1937, appellant retained custody of the children until the end of the school term in 1938, at which time the two older boys went with their father, appellee (who, in the meantime, had married again and was residing in Dallas, Texas), and at the expiration of the period of his custody, he returned the boys to their

mother, and, while in Florida, it seems that he and appellant entered into the agreement evidenced by the following letter: "Fort Myers, Florida, September 10, 1938. Mrs. Nan B. Oldham, Fort Myers, Florida. Dear Nan: This confirms our arrangement made today, whereby you are agreeable for our son Dick, to remain with me indefinitely without reference to the arrangement as to the other children. I have given you this letter in duplicate. Please keep one copy and let me have the other duly signed by you, so that there will be no misunderstanding between us as to the children. Sincerely, (signed) John C. Oldham (signed) Nan Oldham."

Appellee contends that the agreement, of itself, wrought such a material change in the conditions as to authorize the court, in the interest of the minor, to set aside the feature of the former decree relating to the custody of the minor involved, and to award his permanent custody to appellee. We do not think so; in fact, we fail to discover, in the subject matter of the letter-agreement, a tendency to change the conditions, in any way adverse to, or affecting, appellant's qualification or fitness as custodian of the minors, or that, in the least, tends to show that, by reason of the agreement, the best interest of the minor required a modification of the original decree. As before stated, appellee failed to introduce any evidence in support of his allegations as to changed conditions, except the letter just mentioned; on the other hand, appellant testified that she had a home, was amply able financially to support, properly care for and educate the children. As stated in Evans v. Taylor, Tex.Civ. App., 128 S.W.2d 77–79, the proof must show that the situation and character of the respective parties have so changed as to render it to the (best) interest of the infant that the former order be set aside or modified. We do not think the subject matter of the letter-agreement in question bears any relevancy to such an issue.

It is further contended that, because appellant voluntarily relinquished custody of the minor, subsequent to the original decree, the burden was upon her to show that the best interest of the minor would be served by returning him to her custody. We do not think the letter-agreement was of any contractual value whatever; therefore, was incapable of specific performance. In Legate v. Legate, 87 Tex. 248, 253, 28 S.W. 281, 283, our Supreme Court said that, "The attempted transfer (referring to a transfer of the custody of a child) is not a contract, and cannot be enforced as such, because neither the child nor its custody was a subject-matter of contract."

Besides, we do not think the letter shows that Mrs. Oldham intended to permanently resign and turn the boy over to appellee, even if she had the legal right to take such action, which, absent a modification of the original decree, we do not think she possessed. At best, the letter indicates merely a temporary arrangement; consent by the mother for the father to have custody of the boy for an indefinite period, terminable by either at any time.

We therefore think the trial court erred, and that its judgment should be reversed and judgment here rendered in favor of appellant, affirming her right under the decree of the Circuit Court of Lee County, Florida, to have the custody and control of Richard Grey, to be exercised in accordance with the provisions of said decree.

Reversed, and rendered for appellant.

### On Motion for Rehearing.

Rehearing denied.

YOUNG, Justice (dissenting).

Under the Florida decree, dated December 7, 1937, the agreement of Mr. and Mrs. Oldham, relative to their son Richard, provided that he should be with his mother (appellant) during the school term of each year, and with his father (appellee) for the summer months; such arrangement as to custody being approved by the Circuit Court. Mr. Oldham thereby received custody of Richard during the summer of 1938; and, pursuant to said agreed judgment, appeared with the boy at appellant's home in Fort Myers, Fla., on September 10, 1938, where, in lieu of further performance of the decree, the letter agreement was entered into, whereby indefinite custody of the minor was to remain in the father. The latter's status as custodian continued until the habeas corpus proceedings of May, 1939. This suit by the mother was based solely on her alleged right to renewed possession, by virtue of the Florida judgment, claiming the letter-relinquishment of custody to be a nullity; the application containing no basic

facts of the father's incompetency, or that the child's best interests would be subserved, except a bare legal conclusion in her supplemental petition, insufficient to raise an issue. 32 Tex.Jur., Pleading, Sec. 65, pp. 489, 491. The dominant factors in this case are, that the dispute is between parents and not between a parent and a third person to whom custody had been previously relinquished; also, that the undisturbed and continued possession of the boy by his father for almost a year was occasioned by the mother's waiver of her rights, as fixed in the previous judgment. This act, evidenced by the letter, in conferring upon the natural father a perferential right to said custody, was, in no sense, invalid; Sykes v. Speer, Tex.Civ.App., 112 S.W. 422, affirmed by the Supreme Court, 102 Tex. 451, 119 S.W. 86, 132 Am.St.Rep. 896; and the subsequent possession by appellee was likewise rendered lawful. Legate v. Legate, 87 Tex. 248, 28 S.W. 281.

To my mind, a situation is here presented where the rights of the separated parents to the child in question are equal; R.S. art. 4118; that appellant cannot regain custody by simply pleading the provision of a judgment which she has waived; and that her own voluntary act in releasing the child to appellee, cast upon her, in the present action in habeas corpus, the burden of proof as to appellee's incompetency, together with facts favorable to the issue that the boy's welfare demanded a recognition of the former status. The terms of the Florida judgment as to custody were not final, but "temporary and conditional"; Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 168, 116 A.L.R. 1293, and an entirely insufficient basis for a restoration to the mother of a child voluntarily released to its father, with consequent and rightful possession by the latter over a considerable period of time. It was therefore incumbent upon the mother, in a plea to a court of equity for repossession, to show that the child's best interest required its return to her. The majority has held that evidence of the Florida decree placed upon appellee the burden of proving change of conditions; whereas, the true rule is (the parents being contestants) that the voluntary relinquishment of custody appearing in the record is prima facie evidence of changed conditions, imposing upon the petitioner in habeas corpus to at least go forward with testimony in support of the relief sought. See 31 Tex.Jur., Parent and Child, Sec. 21, p.

1297, where the statement is made: "But where a parent has voluntarily parted with and seeks to regain the child, he has the burden of proving his fitness and that the best interest of the child will be subserved by commitment to his care." Also, in the following cases, the introduction of relinquishment agreement, in absence of further testimony, established the best interests of the minor, and the right of habeas corpus was in each instance denied; Peese v. Gellerman, 51 Tex.Civ.App. 39, 110 S.W. 196, writ refused; Legate v. Legate, supra; Davis v. Sears, Tex.Com. App., 35 S.W.2d 99. The majority action, in its reversal and rendition under this record, is in direct conflict with the decisions just cited; and the letter-agreement, far from being a "nudum pactum", or of no probative force, as the majority holds, is always to be given its proper effect by a court of equity "in arriving at a conclusion as to where the custody of the child should be placed". Peese v. Gellerman, supra [51 Tex.Civ.App. 39, 110 S.W. 197]. Judge Denman, in Legate v. Legate, supra, and pertinent to a similar release of custody, says: "Where, however, a parent, by writing or otherwise, has voluntarily transferred and delivered his minor child into the custody and under the control of another, as in the case at bar, and then seeks to recover possession of the child by writ of habeas corpus, such parent is invoking the exercise of the equitable discretion of the court to disrupt private domestic relations which he has voluntarily brought about, and the court will not grant the relief unless, upon *a hearing of all the facts, it is of opinion that the best interest of the child would be promoted thereby.* It is sometimes said that such a voluntary transfer is 'void,' or that it is 'contrary to public policy'; but the cases using such language show that it is not used in an absolute sense, but in the sense that such transfer is no impediment to the action of the court in determining what is best for the interest of the child. *The law does not prohibit such a transfer, but, on the contrary, allows the child to reap the benefit thereof when it is to its interest so to do.* The attempted transfer is not a contract, and cannot be enforced as such, because neither the child nor its custody was a subject-matter of contract. The fact that in pursuance of this attempted contract the parents delivered the child to appellee, and appellee received the same for a lawful purpose, new domestic relations thereby

being formed for the child, renders the possession by appellee of the child prima facie lawful." (Italics mine.)

The original opinion erred in placing the burden of proof upon appellee in this case, whereas same was upon appellant, as the trial court correctly held.

But, aside from the above considerations, the district court was in position to view the conduct and demeanor of the parties under their testimony, and draw first-hand conclusions therefrom. Such courts are vested with very broad discretion in matters of this kind, and it is only a very clear case of abuse of discretion that justifies the Appellate Court to interfere with its exercise. Moore v. Moore, Tex.Civ.App., 213 S.W. 949. I conclude that the judgment of the lower court should be affirmed.